**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **JACOB DYLAN GREEN,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:23-cv-151** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JACOB BLAINE LILLY.,** *et al.*, | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jacob Dylan Green brings an excessive force claim under 42 U.S.C. § 1983 and state law against the New River Valley Regional Jail Authority, Superintendent Gregory Winston, and two correctional officers, for injuries sustained when he was a pretrial detainee at the Jail. The Jail and Winston move to dismiss Green's § 1983 claims for failure to state a claim, and to dismiss the state law claims for lack of subject matter jurisdiction, alleging sovereign immunity. The motions to dismiss are well founded and are **GRANTED**. This case will continue against the individual officer defendants.

### I.    Background

On the evening March 15, 2022, Green was a pre-trial detainee confined in the holding area along with approximately fifteen other pretrial detainees awaiting processing at the Jail in Dublin, Virginia. The Jail was behind in processing individuals and many had been waiting in the holding area most of the day. Jail employees, including Defendants Jacob Lilly and Ashley Bradberry, were verbally abusing and insulting the detainees.

Defendant Lilly got into a verbal altercation with Green, and threatened to "smack the tits

off" of him.  Defendant Lilly approached Green and hit him, knocking him unconscious on the first punch.  Lilly got on top of Green and continued to hammer him with both fists.  Defendant Bradberry joined Lilly and began hitting and kicking Green.  Bradberry had her knees on Green's neck and her hands braced on the ground on either side of his head.

Defendant Lilly left and Defendant Bradberry remained on top of Green. Bradberry insulted Green by saying things such as "you should have kept your fat mouth shut." Green responded verbally, and Defendant Lilly came back, kneed Green in the ribs and resumed hitting him.

Defendants Lilly and Bradberry dragged Green to another part of the Jail, intentionally knocking him into a door frame and injuring his eye.  They took him to a suicide cell, while still in handcuffs, and threw him down forcefully on his stomach.  Lilly told Green not to call Bradberry a "whore" again and punched him in the face. Lilly ripped off Green's pants, saying, "you're my bitch now," and "your kids are my kids."

Lilly and Bradberry later tried to convince Green to cover up their actions, and threatened Green, alluding to him "falling from the bunk hard," and that if he spoke out he would face "consequences."  Lilly stated that he had been there for "15 hours" and "just had another incident," referring to an altercation with a fellow officer at the Jail earlier that evening.

Green was transported to the hospital at 2:44 a.m. on March 15, 2022, at least six hours after the beating by Defendants Lilly and Bradberry. Green reported acute pain and his left eye was swollen shut. The hospital found that Green had suffered a periorbital contusion to the left eye/swelling/hematoma, facial contusion, muscle strain, left chest contusion and pain, bruised ribs, swelling, and neck pain.

Lilly and Bradberry submitted false incident reports to the Jail painting Green as the

aggressor and omitting their assaults and batteries. Lilly and Bradberry were later charged with assault and battery and providing a false report. Both stipulated that the evidence was sufficient to find them guilty, and both were given deferral orders under to Virginia Code § 19.2-298.02.

### a. Facts Involving Defendant Winston and the Jail

Defendant Winston was Superintendent of the Jail during the incident and was responsible for establishing policies and customs for training and supervision of employees and the use of force during pretrial detention. Winston served as the final policymaker for the Jail.

Green alleges that the excessive force he suffered from Lilly and Bradberry was an institutionalized practice of the Jail, which was known to, maintained by, acquiesced in and ratified by Defendant Winston. The Jail and Defendant Winston tacitly approved of the improper use of excessive force, and directly or indirectly authorized their officers to act in such a reckless, negligent and improper manner so that the constitutional rights of Green were violated.

Defendant Winston had prior notice of Defendant Lilly's vicious, malicious and violent tendencies and behaviors but took no steps to train him or correct his abuse of authority. Defendant Winston failed to instruct, supervise, control and train Defendants Lilly and Bradberry and other employees who engaged in the use of excessive force.

There had been "issues and problems" with employees at the Jail for at least a year prior to this incident. The Jail and Winston were aware that employees were burned out and frustrated and complaints had been made to some members of the Jail Board. The Jail and Winston knew they had untrained, inexperienced staff that required a lot of supervision, creating a very difficult work environment.

Defendant Lilly's issues with anger and violence were well known to the Jail and Winston. Defendant Lilly had two previous incidents in which he attacked inmates on November

18, 2021 and again on February 11, 2022.

Green asserts claims under 42 U.S.C. § 1983 against defendant Officers Lilly and Bradberry for excessive force in violation of the Fourteenth Amendment; <u>Monell</u> liability claims under 42 U.S.C. § 1983 against the Jail and Winston; assault and battery against all defendants; negligent retention against the Jail and Winston; and gross negligence and willful and wanton negligence against the Jail and Winston. Dkt. 1.  The Jail and Winston move to dismiss the Complaint in its entirety under Rule 12(b)(6); and also move to dismiss certain counts under Rule 12(b)(1).  These motions have been fully briefed and the court heard oral argument.

    II.    **Discussion**

        a.  <u>**Standard of Review**</u>

            i.  <u>**Rule 12(b)(6)**</u>

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter. . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of a cause of action")).  I accept all factual allegations in the complaint as true and draw all reasonable inferences in Green's favor as the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).  Legal conclusions, however, are not entitled to the same presumption of truth. <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 556 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of

the elements of the cause of action"). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable actual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### ii.  Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991).  The plaintiff bears the burden of establishing that subject matter jurisdiction exists.  Evans v. B.F. Perkins Co., 166 F. 3d 642, 647 (4th Cir. 1999).

### b.  Federal Claims

### i.  Municipal Liability Claims Against the Jail

Green seeks to impose liability on the Jail under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) for the excessive force by officers Lilly and Bradberry. Section 1983 provides a cause of action against persons who, acting under color of state law, deprive a citizen of the rights, privileges, and immunities secured by the Constitution and federal law.  In Monell, the Supreme Court determined that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights. Id. 436 U.S. at 690–91.

Green alleges that excessive force was an institutionalized practice of the Jail; that the Jail implemented an official policy or custom of condonation or deliberate indifference to the use

of excessive force by officers; that the Jail tacitly approved of the improper use of excessive force, and directly or indirectly authorized its officers to act in such a manner; and that the Jail had a custom or policy of failing to train its officers adequately. Compl. ¶¶ 26, 29, 30, 31. Thus, Green attempts to advance §1983 claims against the Jail based on an alleged policy or custom of excessive force; condonation and/or ratification of the use of excessive force by officers; and a failure to properly train and supervise its officers.

Defendants argue that Green's Monell claims are not alleged with sufficient factual specificity, but are simply a formulaic recitation of the elements of a cause of action. Defendants also assert that the factual allegations in the Complaint are insufficient to raise Green's Monell claims above a speculative level.

To impose Monell liability on a regional jail authority, Green must establish the existence of an official policy or custom that caused the constitutional deprivations alleged. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011). Custom requires that such practices are "so frequent in occurrence that actual or constructive knowledge is implied." Jackson v. Brickey, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011) (citing Bd. Of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403–04 (1997)).

"[A]ny viable § 1983 *Monell* claim has two elements: (1) the municipality had an unconstitutional "policy or custom-; and (2) the unconstitutional "policy or custom" caused a violation of the plaintiff's constitutional rights. Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *12 (D. Md. July 24, 2015). A municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is ... the 'moving force' behind the

particular constitutional violation." <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted).

"[A] plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that 'manifest deliberate indifference to the rights of citizens.'" <u>Jones v. Chapman</u>, 2015 WL 4509871, at *14 (quoting <u>Carter v. Morris</u>, 164 F.3d 215, 218 (4th Cir. 1999)).

### 1. <u>Custom or Policy</u>

Green does not allege that the Jail had an express policy regarding excessive force. Green proffers no policy statement, ordinance, regulation or decision officially adopted and promulgated by the Jail regarding the use of excessive force. "Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" <u>Carter v. Morris</u>, 164 F.3d at 218 (quoting <u>Monell</u>, 436 U.S. at 691).

When a plaintiff seeks to establish liability based on unconstitutional custom, he must demonstrate that the practices are "so frequent in occurrence that actual or constructive knowledge is implied." <u>Jackson v. Brickey</u>, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011). Further, a municipality's conduct must rise to the level of "deliberate indifference." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388–89 (1989). Custom need not involve direct action from the municipality, and a court may infer it "from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." <u>Jones v. Chapman</u>, 2015 WL 4509871, at *13. A court may not infer custom from merely isolated incidents. <u>Id.</u>

7

Green's complaint includes several paragraphs of generalized allegations that the Jail was aware of the previous use of excessive force by its officers and took no action. Compl. ¶¶ 26–31. The only specific allegations supporting Green's claim that the Jail had an official policy or custom of deliberate indifference to the use of excessive force is the assertion that the Jail was aware of Defendant Lilly's issues with anger and violence. Compl. ¶ 33. In support, Green alleges that Defendant Lilly had "at least two previous instances involving violence against inmates. He attacked an inmate on November 18, 2021, and then attacked an inmate on February 11, 202[]."[1] Compl. ¶¶ 33, 34.

These allegations are insufficient to demonstrate that the alleged excessive force by Lilly is "widespread" and "so frequent in occurrence" as to imply constructive knowledge and infer a custom by the Jail.  A court may not infer custom from merely isolated incidents. Booker v. City of Lynchburg, No. 6:20cv11, 2020 WL 8513807, at *4 (W.D. Va. Nov. 12, 2020) R. & R. adopted by 2021 WL 519905 (W.D. Va. Feb. 11, 2021). "A policy or custom that gives rise to § 1983 liability will not, however, 'be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.'" Jones v. Chapman, 2015 WL 4509871, at *13 (quoting Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984)).

Green argues that the following additional facts in the Complaint bolster his Monell claims: that Officer Lilly's anger issues were widely known throughout the Jail (Compl. ¶ 33); that Officer Lilly had a propensity towards violence (Compl. ¶ 30); that the Jail was a stressful work environment (Compl. ¶ 32); and that the Jail employees were burned out, overworked and stressed (Compl. ¶ 32). However, Green asks the Court to hold the Jail and Winston liable for a custom of, and deliberate indifference to, situations of excessive force in violation of a pretrial

---

[1] The Complaint does not include the last number of the year for the February 11 attack. Compl. ¶ 33. During oral argument, counsel indicated that the second attack took place on February 11, 2022.

8

detainee's constitutional rights.  Claims of a stressful work environment, employee burn out, or the violent tendencies of an officer at the Jail do not violate a pretrial detainee or inmate's constitutional rights.  The only facts pertaining to prior use of excessive force are the two prior incidents of violence by Officer Lilly.

While courts have allowed custom or practice claims to survive even when plaintiff provides few examples, see, e.g., Washington v. Baltimore Police Dep't, 457 F. Supp. 3d 520, 535–36 (D. Md. 2020) (allowing claim to survive motion to dismiss where plaintiff provided four prior examples of Brady violations around the same time as the alleged incident), it is well settled that isolated or sporadic violations of rights are insufficient to establish a custom or practice for §1983 purposes. See Nicholson v. Baltimore Police Dep't., No. DKC 20-3146, 2021 WL 1541667, at *8 (D. Md. Apr. 20, 2021) (Sporadic or isolated violations of rights will not give rise to Monell liability; only "widespread or flagrant" violations will.)  "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice. Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (quoting Kopf v. Wing, 942 F.2d 265, 269 (4th Cir. 1991)).  In Carter v. Morris, the Fourth Circuit held that two prior incidents of the Danville police department arresting individuals without cause is insufficient to prove an unconstitutional municipal policy. 164 F.3d 215, 220 (4th Cir. 1999). A "meager history of isolated incidents does not approach the 'widespread and permanent' practice necessary to establish municipal custom." Id. at 220 (quoting Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995)).  Conversely, in Booker v. City of Lynchburg, the court allowed unconstitutional policy or custom claim under Monell to survive a motion to dismiss where the plaintiff provided 13 examples of excessive force by Lynchburg Police Officers, which were "sufficient to imply that the City had constructive knowledge of a custom

that its officers used excessive force against its citizens and that the City had a deliberate indifference to such acts." 2020 WL 8513807, at *4.  See also, Jones v. Chapman, 2015 WL 4509871 at *12–17 (permitting Monell unconstitutional custom claim to proceed past motion to dismiss when plaintiff alleged three examples of misconduct, including a publicized beating of a citizen and unprovoked assault and battery by defendant officers, and the killing of a restrained person by other Baltimore Police officers.)

Here, Green alleges that one officer had two prior incidents of violence within five months prior to the altercation in the Complaint.  The Complaint does not provide details regarding the prior incidents other than they "involved violence against inmates."  The Complaint does not establish whether the prior incidents constituted excessive force against an inmate, or whether they involved facts similar to those here. The incidents are simply described as "violence" and "attacks."  These allegations, standing alone, are insufficient to establish conduct that was persistent, widespread, and so frequent in occurrence that the constructive knowledge of the Jail is implied.  Allegations of two discrete prior instances, without more, does not establish that the Jail had a custom or practice of unconstitutional excessive force such that it was deliberately indifferent to the use of excessive force by its officers.

## 2.  Condonation or Ratification

Under the condonation or ratification theory of liability, a municipality violates § 1983 if policymakers fail to remedy "a persistent and widespread pattern of unconstitutional conduct." Owens v. Baltimore City State's Atty's Office, 767 F.3d 379, 402 (4th Cir. 2014) (citing Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987)). A plaintiff must prove that there is a "persistent and widespread practice[ ] of municipal officials" and that the "duration and frequency" of such indicates that policymakers (1) had either actual or constructive notice of unconstitutional

conduct by its officers but (2) the municipal officials failed to correct unconstitutional conduct due to their "deliberate indifference." Id. at 402–03 (citing Spell, 824 F.2d at 1386–91). Isolated or sporadic misconduct by officers is insufficient to successfully assert a § 1983 claim under condonation theory. Id. (citing Spell, 824 F.2d at 1387).

While proving a condonation claim "is no easy task," alleging a condonation claim "is, by definition, easier." Id.  A plaintiff must support a condonation claim at the pleading stage with facts which, if true, "state a claim to relief that is plausible on its face." Id. at 403 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  While the facts "need not be particularly detailed," there must be "particular examples" of deliberate indifference by officials. Jones, 2015 WL 4509871 at *17.

Here, Green alleges that the Jail had actual knowledge of the persistent unconstitutional use of force by its officers. Compl. ¶ 58.  In the alternative, Green suggests that the Jail had constructive knowledge that its officers were routinely engaged in the unconstitutional use of excessive force based on the two prior instances by Officer Lilly. Comp. ¶ 30.  In support of this claim, Green points to the two prior attacks by Officer Lilly.

Defendants argue that two prior attacks by one officer within a few months prior to the alleged incident does not demonstrate a persistent and widespread use of unconstitutionally excess force.   I agree that Green's allegations of Officer Lilly's two prior attacks lack sufficient specificity and numerosity to support a condonation or ratification claim.  In Nicholson v. Baltimore Police Department, the court found one alleged prior incident of misconduct insufficient to survive a motion to dismiss plaintiff's claim that the Baltimore Police Department acquiesced in a widespread pattern of constitutional violations. 2021 WL 1541667, at *9. Specifically, the plaintiff pointed to a single prior incident in which the police department was

sued because the defendant officer broke an individual's jaw while responding to a call. The court stated, "[t]his isolated incident of prior misconduct alone is insufficient to meet the high bar required for stating a Monell claim based on a theory that the BPD acquiesced in a widespread pattern of constitutional violations." Id.  Likewise, Green's factual allegations of two prior instances of violence by one officer are insufficient to support a Monell claim that the Jail was deliberately indifferent to the actions of its officers and condoned such conduct. Similar to Green's custom and practice claim, his condonation claim fails to state sufficient facts to state a plausible claim that the Jail condoned a widespread and persistent pattern and practice of misconduct where pretrial detainees faced excessive force by officers.

### 3.  **Failure to Train**

Green asserts that it was the policy and custom of the Jail to inadequately and improperly train its correctional officers; that the Jail did not require appropriate in-service training or re-training of officers who were known to have engaged in misconduct; and that the Jail did not take reasonable steps to train its employees when the need for more or different training was obvious. Compl. ¶¶ 27, 28, 29, 30, 49, 57. Green also alleges that Winston failed to instruct, supervise, control and train Defendants Lilly and Bradberry and other officers regarding the proper use of force during the pretrial detention of individuals. Compl. ¶ 52.

Defendants argue that Green's failure to train claim is not alleged with factual specificity, but rather is an impermissible formulaic recitation of the elements of the cause of action. Defendants also allege that the factual allegations in the Complaint are insufficient to raise Green's failure to train Monell claim above a speculative level. I agree that Green does not provide facts of a specific training deficiency such that the Jail is subject to Monell liability for failure to train.

12

A municipality can be held liable for an established "policy" through a failure to train if it reflects a "deliberate" or "conscious" choice not to do so. Nicholson, 2021 WL 1541667, at *7. To establish liability on failure to train claim under § 1983, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to properly train the subordinates, illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights. Brown v. Mitchell, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004) (citing Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000)).

A failure to train claim rises to the level of a § 1983 violation when the municipality's failure to train its employees amounts to "deliberate indifference" to the rights of the person affected by the untrained employee. Connick v. Thompson, 563 U.S. 51, 61 (2011). Ordinarily, such deliberate indifference requires plaintiff to establish "[a] pattern of similar constitutional violations by untrained employees." Id. at 62.

Deliberate indifference is a "stringent standard," and a municipality's culpability is often "at its most tenuous" when a claim turns on failure to train. Id. at 61. While deliberate indifference is not a heightened pleading standard, Booker, 2020 WL 8513807, at *6, the plaintiff must point out "a specific deficiency" in training, "rather than general laxness or ineffectiveness in training." Spell, 824 F.2d at 1390.  The municipality will only be liable if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989).

Courts have recognized that the <u>Monell</u> context raises special concerns when considering the futility of a failure to train claim; and that at the motion to dismiss stage, courts should not expect the plaintiff to possess a rich set of facts regarding the municipal actor's internal policies and training procedures before discovery. <u>Johnson v. Baltimore Police Dept.</u>, 2020 WL 1169739, at *34; <u>Booker v. City of Lynchburg</u>, 2020 WL 8513807, at *6–7.

Nevertheless, even at the pleading stage, a plaintiff seeking to impose liability on a failure to train theory cannot rely on legal conclusions and speculations, but must allege at least some "facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." <u>Nicholson</u>, 2021 WL 1541667 at * 7 (citing <u>Lewis v. Simms</u>, No. AW–11–CV–2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (quoting <u>Drewry v. Stevenson</u>, No. WDQ–09–2340, 2010 WL 93268, *4 (D. Md. Jan. 6, 2010)), <u>aff'd</u>, 582 F. App'x 180 (4th Cir. 2014)). <u>See Staton v. Doe</u>, No. 6:15cv34, 2016 WL 6493418, at *4 (W.D. Va. Oct. 12, 2016) (Dismissing failure to train claim where plaintiff alleged only a formulaic recitation of the elements of a failure to train claim and failed to allege any facts showing that a specific insufficiency in the training program actually caused his alleged injuries); <u>Jackson v. Brickey</u>, 771 F.Supp.2d 593, 604 (W.D. Va. 2011) (Dismissing failure to train claim where mere conclusory statements regarding the police department's failure to train are insufficient and references to generalized deficiencies within the department do not sufficiently flesh out his allegations).

It is clear that stating a claim for failure to train requires more than bald assertions that police officers were not properly trained. <u>Jones v. Chapman</u>, 2015 WL 4509871, at *18. Even if "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training

program." Harris, 489 U.S. at 390–91. In Nicholson v. Baltimore Police Department, the court dismissed a failure to train claim where the plaintiff did not allege any factual details about the sort of training that BPD officers actually receive, and only referenced generalized deficiencies within the department.  The court also held that pointing to a single prior instance of police misconduct was insufficient to allege that the training failure reflects a deliberate or conscious choice by any municipal decisionmaker. 2021 WL 1541667, at *7.

Here, Green does not allege any factual details about the training that the Jail officers received, the deficiencies of that training, nor how those deficiencies caused Green's injuries. Green's allegations only refer to generalized deficiencies within the Jail, which is inadequate to state a Monell claim for failure to train. Thus, Green has not sufficiently stated a Monell claim based on failure to train.

## ii.  **Supervisory Liability Claim Against Superintendent Winston**

Green alleges a Monell claim against Superintendent Winston for supervisory liability as the final policymaker for the Jail.  Defendants assert that this claim is not properly raised in the Complaint, and is not supported by the allegations in the Complaint.  Specifically, Defendants argue that Count II of the Complaint speaks only to Monell liability in general, and does not state a claim of supervisory liability against Winston. Defendants note that the Complaint does not even include the word "supervisory."  Green asserts that the Complaint puts Winston on notice that it states supervisory liability claim against him as the final policymaker for the Jail. Assuming that Green's Complaint states a claim of supervisory liability against Winston, I find that the allegations set forth in the Complaint are insufficient to support the claim.

"A supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances." Green v. Beck, No. 12-7279, 539 F. App'x 78, 80 (4th Cir. Aug. 27,

2013).  Specifically, the Fourth Circuit has recognized §1983 claims against supervisory employees where citizens "face a pervasive and unreasonable risk of harm from some specified source ... [and] the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive [practices]." Carter v. Morris, 164 F.3d at 220–21.

Green must establish three elements to state a supervisory liability claim under §1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least been used on several different occasions and that the conduct poses an unreasonable risk of harm of constitutional injury. Id.

"The plaintiff ... assumes a heavy burden of proof in supervisory liability cases," for "[h]e not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984) (citation omitted). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." Id.

Green must show Winston's continued inaction in the face of documented widespread abuses. See Dowdy v. Pamunkey Reg. Jail Auth., No. 3:14cv3, 2014 WL 2002227 (E.D. Va. May 15, 2014) (Granting motion to dismiss supervisory liability claim where plaintiff did not

satisfy burden of showing supervisor's inadequate response amounted to deliberate indifference by merely pointing to a single prior incident.) A supervisor cannot be expected to guard against the deliberate criminal acts of his employees when he has no basis upon which to anticipate the misconduct.  Jones v. Chapman, 2015 WL 4509871, at *18.

Here, Green's allegations do not meet this standard.  Green's complaint relies on general allegations that Winston knew or should have known about the unconstitutional conduct of the Jail's officers.  Conclusory assertions that Winston should have known about the unconstitutional conduct of Officer Lilly, standing alone, are not sufficient to state a claim for the personal liability of Winston. See Jones v. Chapman, 2015 WL 4509871, at *24. Green also fails to allege that unconstitutional conduct that is widespread at the Jail.  Green's allegations of two prior isolated incidents of violence by one officer within five months prior to the alleged occurrence, does not rise to the level of documented widespread use of excessive force against pretrial detainees subjecting Winston to supervisory liability.

### c.  State Law Claims Against the Jail

The Jail moves to dismiss Green's state law claims for assault and battery and negligent retention under Rule 12(b)(1) on the ground that it is entitled to sovereign immunity.  In Virginia, a municipal corporation is entitled to sovereign immunity from liability for torts committed by their employees during the exercise of governmental functions. Virginia Elec. And Power Co. ("VEPCO") v. Hampton Redevelopment and Hous. Auth., 217 Va. 30, 34, 225 S.E.2d 364, 368 (1976).  Green argues that the Jail does not constitute a municipal corporation for purposes of sovereign immunity. The test for determining whether regional jail authorities are municipal corporations entitled to sovereign immunity is an established framework; however, federal courts within the Fourth Circuit are split regarding the outcome. Compare Sams v. Armor

Corr. Health Servs., Inc., No. 3:19cv639, 2020 WL 5835310, at *12–13 (E.D. Va. Sept. 30,

2020) with Haleem v. Quinones, No. 5:17cv3, 2017 WL 4400767 (W.D. Va. Sept. 30, 2017).

Neither the Supreme Court of Virginia nor the Fourth Circuit Court of Appeals have addressed

this issue.  I will follow the majority of the judges in the Western District of Virginia, finding

that a regional jail authority is entitled to sovereign immunity. See Donovan v. Buchanan Co.

Sheriff's Office, No. 1:21cv5, 2022 WL 1580108 (W.D. Va. May 19, 2022) (J. Jones); Tilson v.

Humphrey, No. 5:19cv033, 2019 WL 6902677 (W.D. Va. Dec. 18, 2019) (J. Urbanski); Haleem

v. Quinones, No. 5:17cv3, 2017 WL 4400767 (W.D. Va. Sept. 30, 2017) (J. Dillon); Dowdy v.

Pamunkey Reg'l Jail Auth., No. 3:14cv3, 2014 WL 2002227 (E.D. Va. May 15, 2014) (J.

Gibney).

The cases considering this issue agree that the outcome turns on whether a regional jail

authority operates as a municipal corporation. In Hampton Roads Sanitation Dist. Comm'n v.

Smith, 193 Va. 371, 376 (1952), the Supreme Court of Virginia created a two-factor test to

resolve whether an entity should be deemed a municipal corporation: (1) "how many attributes of

the municipal corporation does the entity in dispute possess?" and (2) "in the light of this initial

consideration, what is the particular purpose for which it is sought to determine whether or not a

municipal corporation is present?"  Regarding the first factor, the Hampton Roads court outlined

six defining attributes of a municipal corporation:

> (1) Creation as a body corporate and politic and as a political subdivision of the
> Commonwealth;
>
> (2) Creation to serve a public purpose;
>
> (3) Power to have a common seal, to sue and be sued, to enter into contracts to acquire,
> hold, and dispose of its revenue, personal, and real property;

(4) Possession of the power of eminent domain;

(5) Power to borrow money and issue bonds which are tax exempt, with interest on such

bonds enjoying the same status under tax laws as the interest on bonds of other political

subdivisions of the state; and

(6) Management of the corporation vested in a board of directors or a commission.

City of Richmond v. Richmond Metro. Auth., 210 Va. 645, 647, 172 S.E.2d 831, 832 (1970).

The Supreme Court of Virginia held that a government entity need not possess all six attributes

to be deemed a municipal corporation, but must only possess "enough of the essential attributes."

York Cty. v. Peninsula Airport Comm'n, 235 Va. 477, 667 n. 1 (1988).

More than a dozen federal courts in the Fourth Circuit have used this framework to

address the sovereign immunity of a regional jail authority based on its status as a municipal

corporation.  The decisions generally agree that regional jail authorities lack two of the six

characteristics of municipal corporations: 1) creation as a body corporate and politic and as a

political subdivision of the Commonwealth; and 2) the power of eminent domain.  The decisions

differ on the importance of those two factors to the overall analysis. The cases holding that

regional jails are not entitled to sovereign immunity find that the absence of those two attributes

of a municipal corporation is fatal.  See, e.g., Rucker v. Piedmont Reg'l Jail Auth., No.

3:21cv412, 2021 WL 3863346 (E.D. Va. Aug. 30, 2021); Sams v. Armor Corr. Health Servs.,

Inc., No. 3:19cv639, 2020 WL 5835310, at *12–13 (E.D. Va. Sept. 30, 2020); Heywood v. Va.

Peninsula Reg'l Jail Auth., No. 2:15cv195, 2015 WL 5026188, at *8 (E.D. Va. Aug. 21, 2015).

The cases finding sovereign immunity hold that a regional jail authority has the status of a

municipal corporation for sovereign immunity purposes, even with the two missing attributes.

Haleem, 2017 WL 4400767, at *7.

In Haleem v. Quinones, when considering the Hampton Roads test, Judge Dillon found that "in light of the entire statutory scheme creating jail authorities, a regional jail authority has the status of a municipal corporation for sovereign immunity purposes, even with these two missing attributes." 2017 WL 4400767, at *5. As to the two missing attributes, Judge Dillon reasoned:

> First of all, it is true that the words "body corporate and politic" do not appear in the enabling statute for regional jail authorities. Instead, the governing statutory scheme provides that "the governing bodies of two or more counties, cities, or towns or a combination thereof may be concurrent ordinances or resolutions or by agreement, create a jail authority." Va. Code § 53.1-95.2. The General Assembly states that each regional authority "shall be deemed to be an instrumentality exercising public and essential governmental functions to provide for the public safety and welfare." Va. Code § 53.1-95.7 (emphasis added).

Id. at *13–14. Judge Dillon further pointed out that Va. Code § 53.1-95.22 provides that the article creating jail authorities "shall be liberally construed to effect the purposes thereof." Id. at *5.

Likewise, in Tilson v. Humphrey, Judge Urbanski noted that "[e]ven when governmental bodies are not expressly deemed municipal corporations, 'where it appears that the legislature intended that they should be so construed, the designation 'municipal corporation' is often used in a broad or generic sense to include those 'quasi-municipal corporation' which are created to perform an essentially public service.'" 2019 WL 6902677, at *6 (quoting York Cty. v. Peninsula Airport Com., 235 Va. 477, 480 (1988)).

The Haleem and Tilson decisions noted that regional jail authorities are created by statute. Va. Code § 53.1-95.2. The New River Valley Regional Jail was created by Bland County, Carroll County, Floyd County, Grayson County, Pulaski County, Wythe County, and Radford City. Def. Reply Br., Dkt. 39, p. 7. These entities all have sovereign immunity either as

20

counties (political subdivisions of the Commonwealth) or municipalities in the exercise of their governmental functions. Haleem, 2017 WL 4400767, at *3.  Thus, each of the Jail's member localities would be granted sovereign immunity if they operated a jail independently. See Franklin v. Richlands, 161 Va. 156, 158, 170 S.E. 718, 719 (1933) (holding that a municipality is entitled to sovereign immunity for the operation of a jail). Indeed, local governments are required to construct and operate jails. Va. Code § 53.1-71. The courts in Haleem and Tilson gave credence to the argument that "there is no sound reason why a jail authority—created to curb costs ordinarily borne in full by individual localities—should not be afforded the same immunity afforded to local governments performing the exact same function." Tilson, 2019 WL 6902677, at *6; see Dowdy v. Pamunkey Reg'l Jail Auth., No. 3:14-cv-003-JAG, 2014 WL 2002227, at *3 (E.D. Va. May 15, 2014) ("While Virginia law does not designate a jail authority as a political subdivision, for all intents an authority runs a jail the same way a city, county, or town would.").

Similarly, in Dowdy Pamunkey Regional Jail Authority, the court noted that regional jail authorities possess "many characteristics typical of local governments," including a quintessentially public purpose, a governing body, the ability to acquire property, appoint officers and employees, make contracts, undertake various projects, accept governmental grants and loans, and sue and be sued, an immunity from taxation, and state reimbursement for construction and operational costs. 2014 WL 2002227, at *3. These characteristics entitle it to treatment as a municipal corporation for purposes of sovereign immunity. As Dowdy further noted, "[t]he Virginia Supreme Court has clearly held that the operation of a jail is a governmental function, for which a municipal corporation is immune from suit." Id.

Likewise, in <u>Donovan v. Buchanan County Sheriff's Office</u>, Judge Jones agreed that regional jail authorities possess many of the characteristics typical of municipal corporations and are entitled to sovereign immunity.  2022 WL 1580108, at *8.

Thus, following the <u>Haleem</u>, <u>Tilson</u>, <u>Dowdy</u> and <u>Donovan</u> cases, I find that a regional jail authority should be deemed a municipal corporation for purposes of sovereign immunity.  It is further "clear that the operation of a jail is a governmental function." <u>Haleem</u>, 2017 WL 4400767, at *3.  Thus, Green's state law claims against the Jail for assault and battery and negligent retention are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### d.  <u>Assault and Battery- Vicarious Liability Against Superintendent Winston</u>

The determination that the Jail is immune from suit does not automatically dictate that Superintendent Winston is similarly immune.  Sovereign immunity can, but does not always, protect employees of local governments. Employees of cities, towns, and other local entities only have immunity when performing governmental functions. <u>Messina v. Burden</u>, 228 Va. 301, 312, 321 S.E.2d 657, 663 (1984).  <u>Messina</u> provides a four-part test to determine when government employees are entitled to sovereign immunity: "(1) the nature of the function performed by the employee, (2) the extent of the state's interest and involvement in that function, (3) the degree of control exercised by the state over the employee, and (4) whether the alleged negligent act involved judgment and discretion." <u>Id.</u>  Further, individual employees have immunity only from simple negligence claims; they do not have immunity from intentional torts, or torts involving gross negligence or willful and wanton negligence. <u>Dowdy</u>, 2014 WL 2002227, at * 4.

Thus, to determine individual immunity, a court must ask a series of questions: 1) is the employing entity immune for the function performed by the employee? 2) If the employing entity is immune, does the <u>Messina</u> test indicate whether the employee can be immune? 3) If the

22

employee has immunity, has the plaintiff shown only simple negligence?  If the court answers "yes" to all three questions, the plaintiff cannot recover from the government employee. <u>Dowdy</u>, 2014 WL 2002227, at *4.

Here, Superintendent Winston is immune.  Regarding the <u>Messina</u> test, case law instructs that a jail superintendent's functions fall squarely within the arena of government functions, and both the state government and the regional jail authority have a great interest in, and control over the housing of inmates and the proper operation of a jail. <u>Id.</u>  Further, Superintendent Winston's actions were discretionary in nature, as they involved the hiring, training, supervision and management of the Jail and its officers.  <u>See</u> <u>Simpson v. Commonwealth of Virginia</u>, No. 1:16cv162, 2016 WL 3923887 (E.D. Va. July 21, 2016) (Designing the training curriculum for the Department of State Police necessarily involves the exercise of judgment and discretion under the <u>Messina</u> test.) Thus, Superintendent Winston is entitled to sovereign immunity for Green's simple negligence claims.  However, if Green establishes more than simple negligence, Winston's immunity disappears.

### e.  **Gross Negligence and Willful and Wanton Negligence**

Green also alleges that the Jail and Winton's actions constitute gross negligence and willful and wanton negligence, which are not subject to sovereign immunity. Under Virginia law, "gross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of another." <u>Elliott v. Carter</u>, 292 Va. 618, 791 S.E.2d 730, 732 (2016) (quoting <u>Cowan v. Hospice Support Care, Inc.</u>, 268 Va. 482, 603 S.E.2d 916, 918 (2004)). It must be such a degree of negligence as would shock fair-minded men although something less than willful recklessness. <u>Withers v. Green</u>, No. 6:20-cv-65, 2021 WL 6134689, at *4 (W.D. Va. Dec. 29, 2021); <u>Griffin v. Shively</u>, 227 Va. 317,

320, 315 S.E.2d 210, 212 (1984).  Plaintiffs face a steep hurdle when claiming a defendant's

actions amounted to gross negligence. Doe v. Russell Cnty. Sch. Bd., 292 F. Supp. 3d 690, 716

(W.D. Va. 2018).

　　　Willful and wanton negligence is acting consciously in disregard of another person's

rights or acting with reckless indifference "to [the] consequences with the defendant aware, from

his knowledge of existing circumstances and conditions, that his conduct probably would cause

injury to another." Woods v. Mendez, 265 Va. 68, 76–77, 574 S.E.2d 263, 268 (2003). "'Willful

or wanton negligence involves a greater degree of negligence than gross negligence,' in that an

essential ingredient of the act or omission in willful or wanton negligence is an actual or

constructive consciousness of the danger involved." Boren v. Northwestern Reg'l Jail Auth., No.

5:13cv13, 2013 WL 5429421, at *5 (W.D. Va. Sept. 30, 2013) (reversed on other grounds)

(quoting Boward v. Leftwich, 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955)).

　　　In Mitchell v. Rappahannock Regional Jail Authority, the court found sufficient

allegations of gross negligence against supervising defendants where plaintiff was allegedly

repeatedly sexually abused by a jail officer, alleged that supervising defendants had knowledge

of officer's stalking and harassment, and that each of them had first hand reason to know of his

assaults, and rather than use their power has his superior officer to stop his behavior they "made

light of it, did nothing to intervene, and ignored [plaintiff's] repeated pleas for help." 703

F.Supp.2d 549, 562 (E.D. Va. 2010).  Conversely, in Simpson v. Commonwealth, the court

dismissed a gross negligence claim against the superintendent of the Virginia Department of

State Police where the superintendent was not alleged to have been present when the incident

occurred, nor was he alleged to have ordered any of the actions at issue. No. 1:16cv162, 2016

WL 3923887 (E.D. Va. July 21, 2016). Likewise in Guerrero v. Deane, the court held that failure

to implement policies and custom regarding training, hiring, and supervision generally do not support a claim for gross negligence. No. 1:09cv1212, 2010 WL 670089, at *14 (E.D. Va. Feb. 19, 2010).

Green alleges that Winston behaved negligently by maintaining, acquiescing, and ratifying an institutionalized practice, policy and/or custom of excessive force by the Jail officers; failed to properly train or supervise Defendant Lilly; and failed to discipline employees who engage in the use of excessive force. In support, Green alleges that Winston was aware of two prior incidents of violence by Officer Lilly.  Green has not alleged that Winston was present during the incidents at issue.  Green's allegations do not provide details regarding the nature of the prior attacks by Officer Lilly, whether those incidents were investigated, the outcome of any investigation, and what, if any, action by Winston would have been appropriate under the circumstances.  The allegations in the Complaint are generalized and conclusory and do not provide the details needed to state a claim against Winston for gross negligence or willful and wanton negligence.

### III.    Conclusion

For the foregoing reasons, I **GRANT** the Jail and Superintendent Winston's Motion to Dismiss Green's claims against them and dismiss them as Defendants from this case. The dismissal is without prejudice as to Superintendent Winston. An Order will follow.

Entered:  October 10, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

25